**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40855**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 100** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: December 3, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| TAMI MARIE SOUTHWICK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Judgment of conviction for possession of methamphetamine, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Deborah Whipple, Boise, for appellant. Deborah Whipple argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

MELANSON, Judge

Tami Marie Southwick appeals from her judgment of conviction for possession of methamphetamine. Specifically, she argues that there was insufficient evidence to show that she had knowledge and control of the controlled substances hidden in her vehicle and that the district court committed fundamental error by failing to give a unanimity jury instruction. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Southwick was stopped for having an expired vehicle registration. During the initial contact, the officer discovered that the vehicle was registered and insured under another person's name; however, Southwick claimed that the vehicle, which she had obtained a few months prior, was hers and that she had failed to register and insure the vehicle in her name. The officer asked Southwick and her passenger whether there were any drugs or paraphernalia in the vehicle.

1

Southwick gave a quick negative response regarding marijuana, but provided a more drawn-out, negative response regarding methamphetamine. The officer became suspicious and called for a drug dog. After the officer returned to his vehicle, he noticed the passenger making furtive movements from side to side in Southwick's vehicle.

The drug dog arrived while the officer was completing a citation for the expired registration and lack of proof of insurance. The officers had Southwick, her passenger, and their two dogs exit the vehicle. As she was exiting the vehicle, Southwick made the following unsolicited statement: "Because this is not my car, I'm not responsible for anything in the car, correct?" Southwick had, only moments before, stated that she owned the vehicle, which was confirmed with the previous owner. During an exterior sniff of the vehicle, the drug dog positively alerted to the passenger door.

The passenger then asked whether it was illegal to possess scales. The passenger subsequently revealed that a digital scale was located between the front seats. While searching the vehicle, officers discovered the scale inside a black, zippered case wedged between the driver's and passenger's seats. A white powder residue visible on the surface of the scale tested positive for methamphetamine. Additionally, inside the passenger door where the drug dog alerted, officers found a baggie of methamphetamine. Southwick then admitted that she knew the scale was in the vehicle because she was holding it for a friend and had placed it in between the seats to prevent it from sliding around on the dashboard.

Southwick was charged with possession of methamphetamine, I.C. § 37-2732(c)(1). She was found guilty by a jury and sentenced by the district court to a unified term of six years, with a minimum period of confinement of three years. Southwick appeals.

## II.

## ANALYSIS

Southwick argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt possession of either the residue on the scale or the baggie in the door. Additionally, she contends that the district court committed fundamental error by failing to give a unanimity instruction to the jury that would have required it to specify upon which act of possession the verdict was based. The state responds that there was sufficient evidence to prove possession and that a special unanimity instruction was not required in this circumstance.

2

**A.** **Sufficiency of the Evidence**

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Stevens*, 93 Idaho 48, 50-51, 454 P.2d 945, 947-48 (1969). In fact, even when circumstantial evidence could be interpreted consistently with a finding of innocence, it will be sufficient to uphold a guilty verdict when it also gives rise to reasonable inferences of guilt. *Severson*, 147 Idaho at 712, 215 P.3d at 432; *State v. Slawson*, 124 Idaho 753, 757, 864 P.2d 199, 203 (Ct. App. 1993).

Possession may be either actual or constructive. *State v. Segovia*, 93 Idaho 594, 598, 468 P.2d 660, 664 (1970); *State v. Garza*, 112 Idaho 778, 784, 735 P.2d 1089, 1095 (Ct. App. 1987). In order to prove constructive possession, knowledge and control of the controlled substance must each be independently proven beyond a reasonable doubt by either circumstantial or direct evidence. *State v. Seitter*, 127 Idaho 356, 360, 900 P.2d 1367, 1371 (1995); *State v. Rozajewski*, 130 Idaho 644, 647, 945 P.2d 1390, 1393 (Ct. App. 1997); *see also State v. Betancourt*, 151 Idaho 635, 638, 262 P.3d 278, 281 (Ct. App. 2011). Constructive possession of a controlled substance exists where a nexus between the accused and the substance is sufficiently proven so as to give rise to the reasonable inference that the accused was not simply a bystander but, rather, had the power and intent to exercise dominion and control over the substance. *Rozajewski*, 130 Idaho at 647, 945 P.2d at 1393; *Garza*, 112 Idaho at 784, 735 P.2d at 1095.

However, constructive possession cannot be inferred from the mere fact that the defendant occupied, with a passenger, the vehicle in which the drugs were seized. *State v.*

*Burnside*, 115 Idaho 882, 885, 771 P.2d 546, 549 (Ct. App. 1989); *see also State v. Gomez*, 126 Idaho 700, 706, 889 P.2d 729, 735 (Ct. App. 1994). Indeed, where joint occupancy is involved, substantial evidence must exist establishing the guilt of each defendant, not merely the collective guilt of both; proximity alone will not suffice as proof of possession. *Garza*, 112 Idaho at 784-85, 735 P.2d at 1095-96. Circumstantial evidence, other than the mere fact of possession, may be used to find the requisite knowledge and control. *State v. Groce*, 133 Idaho 144, 152, 983 P.2d 217, 225 (Ct. App. 1999). This can include, for example: the manner in which the drug was wrapped, stored, or carried; attempts to conceal, dispose of, or destroy the contraband; attempts to avoid detection or arrest; the presence of drug paraphernalia; the possession of other contraband or cutting agents; indications that the defendant was under the influence of drugs; the presence of fresh needle marks; as well as the proximity, accessibility, and location of the contraband. *Id.*

In this case, methamphetamine residue was found on a scale hidden in between the driver's and passenger's seat of Southwick's vehicle, and a baggie of methamphetamine was found hidden inside the passenger door. Southwick contends that the state failed to provide sufficient evidence of her knowledge and control of the methamphetamine in either instance.

### 1. Residue

Southwick argues that the state failed to present evidence of both her knowledge and control over the methamphetamine residue on the scale. As to knowledge, Southwick asserts that, although the state presented evidence that she knew that a black, zippered bag containing the scale was in the vehicle, the state failed to present any evidence that she knew of the methamphetamine residue on the scale.

Control of the premises in which the drugs are found has often been used to infer knowledge. *State v. Warden*, 97 Idaho 752, 754, 554 P.2d 684, 686 (1976). However, such an inference cannot be made, absent other circumstances, where the accused does not have exclusive possession of the premises. *State v. Blake*, 133 Idaho 237, 242, 985 P.2d 117, 122 (1999); *Warden*, 97 Idaho at 754, 554 P.2d at 686.

Here, the state did not rely solely on Southwick's presence in the vehicle in close proximity to the methamphetamine residue on the scale to prove knowledge. At trial, an officer testified that Southwick had admitted to knowing the scale was in the vehicle. Further, the officer testified regarding Southwick's unsolicited statement that she was not responsible for

4

anything in the vehicle because she did not own it, despite Southwick's insistence just moments prior that she owned the vehicle, which was confirmed by the previous owner. This suspicious conduct occurred only after Southwick learned that her vehicle would be searched. A reasonable jury could interpret this as being indicative of her knowledge of the controlled substances in the vehicle, including the methamphetamine residue on the scale. Indeed, suspicious behavior by an individual upon learning of an imminent search is a circumstance that can link him or her to drugs found in a vehicle in which that person is not the sole occupant. *See State v. Greene*, 100 Idaho 464, 466, 600 P.2d 140, 142 (1979) (stating that suspicious behavior by a suspect who becomes aware of a law enforcement officer's presence is a circumstance that can link the suspect to drugs found on premises of which the suspect is in nonexclusive possession). Moreover, one officer testified that the scale could not be identified as such while in the black, zippered bag. Although Southwick alleged that she had not opened the black bag, she knew that it contained a scale, which a reasonable jury could interpret to mean that she had opened the bag and saw the methamphetamine residue that covered the scale.[1] The very presence of the digital scale, which is often associated with the use and sale of controlled substances,[2] also supports an

---

[1]    Southwick told the officers that she was holding the scale for a friend, which provided an alternative basis for her knowledge that the black bag contained a scale. However, the jury could reasonably discount the very existence of this friend, as Southwick was unable to provide any identifying information for the alleged individual when pressed by police.

[2]    *See, e.g.*, *State v. Hansen*, 138 Idaho 791, 794, 69 P.3d 1052, 1055 (2003) (noting that digital scale was "paraphernalia associated with meth production"); *Blake*, 133 Idaho at 239, 985 P.2d at 119 (noting that the search of a vehicle uncovered "methamphetamine, a scale, and other paraphernalia"); *State v. Gamble*, 146 Idaho 331, 342, 193 P.3d 878, 889 (Ct. App. 2008) (including presence of digital scale as evidence supporting various drug charges); *State v. Thompson*, 143 Idaho 155, 159, 139 P.3d 757, 761 (Ct. App. 2006) (noting that the presence of scales along with packaging material and baggie of methamphetamine was one of "many items indicating drug use"); *State v. Thorpe*, 141 Idaho 151, 153, 106 P.3d 477, 479 (Ct. App. 2004) (noting that a search revealed "scales and other drug paraphernalia"); *State v. Green*, 136 Idaho 553, 558, 38 P.3d 132, 137 (Ct. App. 2001) (including scales a part of "paraphernalia associated with drug production and drug use"); *State v. Devore*, 134 Idaho 344, 349, 2 P.3d 153, 158 (Ct. App. 2000) (noting that "a scale and other [drug] paraphernalia" were found during a search in addition to methamphetamine); *State v. Rogerson*, 132 Idaho 53, 55, 966 P.2d 53, 55 (Ct. App. 1998) (stating that "scales and other drug paraphernalia" were found during a search); *State v. Sorbel*, 124 Idaho 275, 279, 858 P.2d 814, 818 (Ct. App. 1993) (listing scales as an item "connected with drug dealing"); *State v. Hocker*, 115 Idaho 544, 546, 768 P.2d 807, 809 (Ct. App. 1989) (indicating that the presence of scales supported charge of possession of marijuana with intent to distribute).

inference that Southwick knew of the scale and its use with methamphetamine, especially considering that other methamphetamine was found in the vehicle. Finally, the scale was found wedged in between the driver's and passenger's seats and was covered by an armrest, allowing for the reasonable inference that Southwick hid the scale there to prevent its discovery. From this evidence, a reasonable jury could find that the prosecution proved beyond a reasonable doubt that Southwick was aware of the methamphetamine residue on the scale.

As to control, Southwick argues that there was no evidence establishing that she had the power and intent to control the methamphetamine residue on the scale. She relies on *Burnside* for support, but her reliance is misplaced. In *Burnside*, officers found psilocybin mushrooms in a search of Burnside's vehicle, which had recently been occupied by Burnside and a passenger. At Burnside's trial, the passenger testified that he, not Burnside, owned the mushrooms. The state presented no other evidence of Burnside's control of the mushrooms. This Court held that there was insufficient evidence to prove that Burnside had control over the mushrooms in light of the testimony of sole ownership by another individual and the lack of any other evidence indicating Burnside's ownership or control. *Id.* at 885, 771 P.2d at 549.

Here, no such exculpatory testimony occurred. On the contrary, the state presented substantial evidence showing Southwick's power and intent to control the methamphetamine residue on the scale, including her suspicious statements, her admitted physical possession and handling of the scale in placing it between the seats, and the evidence supporting a reasonable inference that she had opened the black, zippered bag and knew of the methamphetamine residue on the scale. Accordingly, the state presented sufficient evidence for the jury to reasonably infer that Southwick was not simply a bystander but, rather, had both knowledge of and the power and intent to control the methamphetamine residue on the scale.

### 2. Baggie

We next review whether there was sufficient evidence of Southwick's knowledge and control of the baggie found inside the passenger door of her vehicle. The only evidence connecting Southwick to the baggie was her statement to the officer made as soon as it was clear the vehicle would be searched and her several months of ownership of the vehicle, both of which suggest that she may have known that the baggie of methamphetamine was in the door. However, little evidence was presented to establish that Southwick had the power and intent to control the baggie of methamphetamine found in the passenger door aside from her nonexclusive

6

possession of the vehicle in which the baggie was found. Constructive possession cannot be inferred from the mere fact that Southwick occupied, with a passenger, the vehicle in which the drugs were seized. *See id.* at 885, 771 P.2d at 549. Although the location of the baggie inside the door could suggest that the baggie had been hidden there, it could also support the inference that the baggie was already inside the door when Southwick obtained the vehicle a few months prior and had failed to notice it. Moreover, the baggie could have been placed in the door by Southwick's passenger without her knowledge or consent, as suggested by the furtive movements of the passenger witnessed by the officer during the stop. As a result, the evidence presented is insufficient to allow a reasonable juror to find that the state met its burden of proving knowledge and control of the baggie beyond a reasonable doubt.

Despite there being insufficient evidence to support Southwick's possession of the baggie of methamphetamine found inside the passenger door, there was sufficient evidence to support Southwick's possession of the methamphetamine residue on the scale. To meet the element of possession, the state was required to prove that Southwick had knowledge and control of *a* controlled substance, not that Southwick possessed both the scale residue and the baggie. The state provided sufficient evidence of Southwick's possession of the methamphetamine residue on the scale to allow a reasonable jury to find beyond a reasonable doubt that the state had met its burden for that element. As a result, substantial evidence supported the jury's finding of guilt.

### B.     Unanimity Jury Instruction

Southwick argues that, even if there was sufficient evidence to support the verdict, the district court erred by failing to give a unanimity jury instruction. This, she claims, is because the charge of possession of methamphetamine could be supported by either possession of the baggie of methamphetamine or possession of the methamphetamine residue on the scale, so the jury should have been instructed that it must unanimously agree on the specific act constituting the charged offense. Moreover, she asserts that she was prejudiced because, without the unanimity instruction, there is a reasonable possibility that the entire jury was not convinced that she possessed either the baggie or the residue, depriving her of a unanimous verdict.

Whether the jury has been properly instructed is a question of law over which we exercise free review. *Severson*, 147 Idaho at 710, 215 P.3d at 430. When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and

7

accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

Southwick did not object to the lack of a unanimity instruction at trial. Ordinarily, a party may not claim that a jury instruction was erroneous unless the party objected to the instruction prior to the start of jury deliberations. I.C.R. 30(b). However, even without a contemporaneous objection at trial, claims of instructional error may be reviewed for the first time on appeal under the fundamental error doctrine. *See State v. Anderson*, 144 Idaho 743, 748-49, 170 P.3d 886, 891-92 (2007); *State v. Hansen*, 148 Idaho 442, 444, 224 P.3d 509, 511 (Ct. App. 2009). This requires the defendant to persuade the appellate court that: (1) the alleged error violates one or more of the defendant's unwaived constitutional rights; (2) the alleged error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) there is a reasonable possibility that the alleged error affected the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

Idaho law requires a trial court to instruct a jury that, in order to convict a defendant, it must unanimously agree on the defendant's guilt. IDAHO CONST. art. I, § 7; I.C. §§ 19-2316 and 19-2317; *State v. Adamcik*, 152 Idaho 445, 474, 272 P.3d 417, 446 (2012); *Severson*, 147 Idaho at 711, 215 P.3d at 431. Such an instruction was given here. An instruction that the jury must unanimously agree on the underlying facts giving rise to the offense, however, is generally not required. *Adamcik*, 152 Idaho at 474, 272 P.3d at 446; *Severson*, 147 Idaho at 711, 215 P.3d at 431; *State v. Nunez*, 133 Idaho 13, 19, 981 P.2d 738, 744 (1999); *see also Schad v. Arizona*, 501 U.S. 624, 631 (1991) ("We have never suggested that in returning general verdicts . . . jurors should be required to agree upon a single means of commission."). Indeed, there is no unanimity requirement for the underlying facts that establish the elements of the crime, even when facts supporting alternative means of establishing an element exist. *See Severson*, 147 Idaho at 711-12, 215 P.3d at 431-32 (holding that the jury could have found that Severson had murdered his wife by suffocating her, overdosing her, or both); *Nunez*, 133 Idaho at 19, 981 P.2d at 744 (holding that a district court did not err in deciding not to instruct the jury that it must unanimously agree on the underlying act giving rise to a misuse of public monies charge); *Downing v. State*, 136 Idaho 367, 372-73, 33 P.3d 841, 846-47 (Ct. App. 2001) (concluding that a defendant charged with lewd conduct involving manual-genital and/or genital-genital contact was not entitled to a specific unanimity instruction because the prohibited acts were merely

8

alternative means by which the defendant may be held criminally liable).  To require unanimous factual findings would ignore that different jurors may be persuaded by different pieces of evidence, even though they agree upon the bottom line.  *Schad*, 501 U.S. at 631-32; *Severson*, 147 Idaho at 711, 215 P.3d at 431.  Thus, in cases involving alternative means of meeting statutory elements, the jury need only agree upon the bottom line.  *See State v. Shackelford*, 150 Idaho 355, 377, 247 P.3d 582, 604 (2010); *Severson*, 147 Idaho at 712, 215 P.3d at 432.

An exception to this general principle applies in cases where it appears that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different criminal acts.  *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004).  Only when evidence is presented that the defendant has committed several *temporally discrete acts*, each of which would independently support a conviction for the crime charged, should the trial court instruct the jury that it must unanimously agree on the specific incident constituting the offense in each count, regardless of whether the defendant requests such an instruction.  *Severson*, 147 Idaho at 711, 215 P.3d at 431; *State v. Molen*, 148 Idaho 950, 957-58, 231 P.3d 1047, 1054-55 (Ct. App. 2010); *Gain*, 140 Idaho at 172-73, 90 P.3d at 922-23; *State v. Montoya*, 140 Idaho 160, 167-68, 90 P.3d 910, 917-18 (Ct. App. 2004); *Miller v. State*, 135 Idaho 261, 266-68, 16 P.3d 937, 942-44 (Ct. App. 2000).  Alternatively, jury unanimity may be protected by the state's election of the incident upon which it will rely for the conviction.  *Gain*, 140 Idaho at 172-73, 90 P.3d at 922-23.

Whether a course of criminal conduct constitutes a single or multiple offenses requires an inquiry into the circumstances of the conduct and consideration of the intent and objective of the actor.  *State v. Bush*, 131 Idaho 22, 33-34, 951 P.2d 1249, 1260-61 (1997); *State v. Major*, 111 Idaho 410, 414, 725 P.2d 115, 119 (1986).  Indeed, we must ask whether there was "a distinct union of *mens rea* and *actus reus* separated by a discrete period of time and circumstance from any other such similar incident" for each of the alleged acts of possession.  *Miller*, 135 Idaho at 268, 16 P.3d at 944; *see also Severson*, 147 Idaho at 701, 215 P.3d at 431.

Here, Southwick was charged with a single count of possessing a controlled substance on a single date, at a single time, and in a single location.  The criminal complaint did not specify the means by which that possession occurred.  Instead, the state presented evidence regarding possession of the methamphetamine residue on the scale and the baggie of methamphetamine found inside the passenger door.  The record does not indicate that there was a distinct union of

9

*mens rea* and *actus reus* separated by a discrete period of time or circumstance for the two alleged acts of possession. These acts occurred at the same time and in the same location; where the controlled substance was stored in that location (the passenger compartment of Southwick's vehicle) is not alone dispositive of whether the acts constituted independent crimes, as we look at all of the circumstances and Southwick's apparent intent and objective. Thus, under the circumstances present here, the acts were not separate and distinct incidents of criminal conduct, but alternative factual means by which the element of possession could be proved. The jury was instructed that it had to unanimously agree upon the "bottom line" of Southwick's possession of a controlled substance at a single time and in a single location; a specific unanimity instruction was not required under these circumstances. As a result, Southwick has failed to establish a clear violation of her constitutional rights resulting from the lack of a unanimity jury instruction, as this case only involved alternative means, not multiple incidents of criminal conduct.

However, this does not conclude our analysis. Only one of the means of possession--the residue on the scale--was supported by sufficient evidence. Although not addressed by either party, this case presents the novel issue of whether reversal is required when one of the alternative factual means of meeting an element of the charged crime is not supported by sufficient evidence. This Court has previously addressed a similar issue of whether a new trial was required when a jury is instructed on alternative conjunctive statutory elements and there is insufficient evidence to support one or more of the alternative elements. *See State v. Cortez*, 135 Idaho 561, 21 P.3d 498 (Ct. App. 2001); *State v. Enyeart*, 123 Idaho 452, 849 P.2d 125 (Ct. App. 1993). In *Enyeart*, we adopted the reasoning of the United States Supreme Court in *Griffin v. United States*, 502 U.S. 46, 56-60 (1991), which held that, when a jury returns a general guilty verdict on an indictment that charges several acts in the conjunctive, the verdict is not reversible if there is sufficient evidence to support at least one of the acts. *Enyeart*, 123 Idaho at 455-56, 849 P.2d at 128-29. Although the case here involves alternative underlying factual means of meeting the single statutory element of possession instead of alternative statutory elements, we conclude that the reasoning in *Griffin* is equally applicable.

In *Griffin*, the defendant was charged with one count of conspiracy, which was alleged to have had two objects. Although there was sufficient evidence to connect the defendant to the first object, testimony anticipated by the state from one of its witnesses did not materialize, so the evidence did not connect the defendant to the second of the alleged objects. The defendant

10

requested--but was refused--what essentially amounted to a unanimity instruction as to the object upon which the jury based its verdict if finding the defendant guilty. Instead, the instructions permitted the jury to return a guilty verdict based on either object. The jury returned a general guilty verdict on the conspiracy charge. *Griffin*, 502 U.S. at 47-49.

On appeal, Griffin argued that, where there was insufficient evidence to support one of the two objects of the conspiracy charge, the conviction had to be reversed. This was based primarily on Griffin's interpretation of two cases--*Stromberg v. California*, 283 U.S. 359 (1931) and *Yates v. United States*, 354 U.S. 298 (1957). However, the Court rejected Griffin's arguments, stating:

> Petitioner cites no case, and we are aware of none, in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional as in *Stromberg*, nor even illegal [due to being time barred] as in *Yates*, but merely unsupported by sufficient evidence. If such invalidation on evidentiary grounds were appropriate, it is hard to see how it could be limited to those alternative bases of conviction that constitute separate legal grounds; surely the underlying principle would apply equally, for example, to an indictment charging murder by shooting or drowning, where the evidence of drowning proves inadequate.

*Griffin*, 502 U.S. at 56.

Thus, the *Griffin* Court drew a distinction between a mistake about the law, which generally requires reversal, and a mistake concerning the weight or the factual import of the evidence, which does not require reversal when another valid basis for conviction exists. It concluded:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law--whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.

*Id.* at 59 (citation omitted).

As noted by the *Griffin* Court, analyzing evidence and determining the facts underlying a criminal charge are functions fittingly within the expertise of juries. Deference to this reality results in the limited scope of appellate review of the sufficiency of the evidence. We review the entire record in the light most favorable to the prosecution to determine whether there is

11

substantial evidence upon which *a reasonable trier of fact* could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. Indeed, we assume that the trier of fact is reasonable unless the record indicates otherwise. This applies equally when the jury is instructed on alternative statutory elements or when the jury is instructed on a single element, but receives alternative underlying factual means of meeting that element, as occurred here. Thus, if there are two possible factual grounds for the jury's verdict, one reasonable and the other unreasonable, we will assume, absent a contrary indication in the record, that the jury based its verdict on the reasonable ground that is supported by sufficient evidence. As previously discussed, the state presented sufficient evidence upon which a reasonable trier of fact could find that Southwick had constructive possession of the methamphetamine residue on the scale. There is also no indication that the jury based its verdict on an unsupported factual ground. Thus, the verdict stands as valid. As a result, Southwick has failed to establish a clear violation of her right to a unanimous verdict resulting from the lack of a unanimity instruction.

## III.

## CONCLUSION

Although there was insufficient evidence to establish that Southwick possessed the baggie of methamphetamine found inside the passenger door of her vehicle, there was sufficient evidence to establish her possession of the methamphetamine residue found on the scale hidden between the driver's and passenger's seats. Additionally, Southwick failed to establish fundamental error through violation of her right to a unanimous verdict because possession of the scale residue and the baggie did not constitute independent criminal conduct, but merely alternative means of meeting the element of possession--one of which was supported by sufficient evidence. Accordingly, Southwick's judgment of conviction for possession of a controlled substance is affirmed.

Judge LANSING and Judge GRATTON, **CONCUR**.

12