# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47451

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: April 30, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| MARVIN TOMAS-VELASQUEZ, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jonathan Medema, District Judge.

Judgment of conviction for trafficking in methamphetamine, possession of marijuana, and possession of drug paraphernalia, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Marvin Tomas-Velasquez appeals from the judgment of conviction entered after a jury trial for felony trafficking in methamphetamine, Idaho Code 37-2732B(a)(4); possession of marijuana, I.C. 37-2732(c)(3); and possession of drug paraphernalia, I.C. 37-2734A(1). Tomas-Velasquez argues the district court abused its discretion when permitting expert witness testimony at trial. Additionally, he asserts insufficient evidence supports the conviction for possession of marijuana and possession of drug paraphernalia. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 11:20 p.m. on December 24, 2018, Officer Lane conducted a traffic stop in Boise of a vehicle without any working headlights or brake lights. Officer Lane made

1

contact with the driver, Tomas-Velasquez, and his ex-wife, Ashley. From the driver's side of the vehicle, Officer Lane could smell marijuana and saw a baggie of methamphetamine underneath Ashley's leg. A subsequent search of the vehicle revealed a container of marijuana in the glove box, a smoking pipe underneath the center armrest, and two more baggies of methamphetamine squeezed between the driver's and passenger's seats. The cumulative weight of the three baggies of methamphetamine was more than 111 grams. Officer Lane also discovered two cell phones, a lighter, and $465 in cash on Tomas-Velasquez's person.

As a result of this encounter, the State charged both Tomas-Velasquez and Ashley with trafficking in methamphetamine. The State also charged Tomas-Velasquez with possession of marijuana and possession of drug paraphernalia. The district court consolidated the cases for trial and entered a scheduling order with a discovery deadline of May 10, 2019.

On July 2, the district court held a pretrial conference. During that conference, Tomas-Velasquez's counsel brought to the court's attention the State's second expert witness disclosure[1] for Detective McCarthy, a narcotics detective. According to defense counsel, this disclosure proposed that Detective McCarthy would testify on the State's behalf "to the street value of methamphetamine." Defense counsel explained this evidence was relevant to a series of text messages between Tomas-Velasquez and a third party, discussing an exchange of drugs for certain dollar amounts. Challenging the State's disclosure, defense counsel stated "Tomas-Velasquez would like to see the expert excluded, but [he] is not agreeing to a continuance."

In response, the prosecutor stated he signed the State's initial disclosure on May 17, and he read that disclosure into the record, including that it specifically provided Detective McCarthy would testify about the "street value" of methamphetamine. The prosecutor stated that this initial disclosure was "standard" but that he became concerned about its lack of detail following the district court's ruling in an unrelated criminal case. As a result, the prosecutor explained that, on June 16, he signed a second "extremely extensive" disclosure. Neither the State's initial disclosure nor its second disclosure is in the appellate record.

---

[1]     During the pretrial conference, Tomas-Velasquez's counsel did not clearly identify the State's second disclosure as the disclosure that Tomas-Velasquez was challenging. She suggests, however, that the State made the challenged disclosure on July 1, 2019, while the prosecutor states he signed it on June 16. In contrast, the State's initial disclosure was dated May 17. Based on these dates, the context of defense counsel's comments during the hearing indicate Tomas-Velasquez's challenge related to the State's second disclosure.

Despite that Tomas-Velasquez appeared to be challenging the State's second disclosure, the district court ruled it would exclude Detective McCarthy's expert testimony because the State's initial disclosure was "untimely and inadequate":

> Here, it appears the [S]tate wants to introduce an opinion by [Detective McCarthy] about the street price of methamphetamine in various quantities in some timeframe, I'd imagine, close to when this occurred.
>
> From what [the prosecutor] just told me, that was not in, well, other than mentioning that he'd talk about prices, what prices were, what the facts or data he's relying on to form the opinion about the prices were not, is not contained in the [S]tate's initial disclosure. It sounds like the [S]tate's initial disclosure was two weeks after my cutoff for compliance with discovery in any event.[2]
>
> I'll find that the [S]tate's disclosure is both untimely and inadequate. I'll exclude that testimony from trial.

In response to this ruling, the prosecutor asked for a continuance, to which the district court responded, "Well, [defense counsel], I guess I'm granting your motion to exclude. [The] issue is, what do I do with the [S]tate's request to continue rather than exclude?" The court then inquired about the evidence the prosecutor intended to present. Describing the anticipated evidence, the prosecutor explained the relationship between certain text messages extracted from one of the cellphones found on Tomas-Velasquez's person. The court summarized this explanation stating, "So in essence, your expert disclosure is that [Detective McCarthy] has read these text messages, and he believes this is talk about drugs?" The prosecutor responded, "Correct. Specifically, [Tomas-Velasquez] talked about drug transactions involving methamphetamine which go to his knowledge and his possession of the methamphetamine found in the vehicle."

After discussing a possible continuance with counsel, the district court denied the State's motion for a continuance, and the court ruled again that it was excluding Detective McCarthy as an expert witness as a sanction for the State's late and incomplete disclosure:

> Well, I'm not going to move the trial date. I'm going to exclude the [S]tate's expert. Frankly, this simply should have been done on time. It should have been done better than it was. Its sounds to me like the [S]tate has other avenues by which it can attempt to prove this case. I'll simply leave it to lie in the bed that it made. I'll keep this on for trial.
>
> . . . .
>
> I'm not going to exclude the text message[s] themselves. I'm simply excluding the expert testimony.

---

2 Contrary to this finding, the State's initial disclosure, which was dated May 17, appears to have been only one week after the court's May 10 discovery cutoff.

At trial, the prosecutor called Detective McCarthy as a witness. He testified that he investigated Tomas-Velasquez's arrest and that he extracted information from the cellphones found on Tomas-Velasquez's person. The prosecutor then sought to elicit testimony from Detective McCarthy about methamphetamine pricing, inquiring "Based on your training and experience, what did an ounce of methamphetamine sell for approximately in December 2018?" Tomas-Velasquez's counsel objected to this question, relying on the district court's pretrial ruling excluding Detective McCarthy as an expert witness. Initially, the court sustained the objection, but then the court overruled the objection after a discussion with counsel outside the jury's presence.

During that discussion, the prosecutor described his recollection of the court's pretrial ruling:

> [Y]our ruling was that [Detective McCarthy] was excluded as an expert and he could not bring an opinion pursuant to our disclosure that the text messages found on the phone were that of drug transactions. I'm asking him simply factual questions of what, in his training and experience, that [methamphetamine] sold for on a particular date. That requires no expert opinion under the rules of evidence.
> . . . .
> [O]ur initial disclosure back in May for Detective McCarthy states that the State intends to offer [Detective McCarthy] as an expert [and] will elicit testimony from [him] including the street value [of methamphetamine].

In contrast, Tomas-Velasquez's counsel recalled the court's ruling differently, stating the court ruled "the State could not elicit testimony about the specific pricing because that specific pricing was lacking in their initial expert disclosure."

The district court ultimately overruled Tomas-Velasquez's objection to Detective McCarthy's testimony about methamphetamine pricing based on the court's recollection of the pretrial ruling:

> My recollection of my ruling was I would not permit Detective McCarthy to give an opinion about the particular text messages . . . . I would not permit him to give an opinion about whether he believed these two individuals, or either one of them, was engaged in the sale of narcotics based on what he read on the phone. I would permit him to give an opinion that the text messages are talking about drugs.
> . . . .
> I do believe the State's disclosure that they are going to ask him questions, given his specialized knowledge as a police officer, about price and how drugs are sold was adequate and was timely made. And so I'll permit him to answer the question that was asked.

4

Following this ruling, Detective McCarthy testified the price of methamphetamine "can go anywhere between three and $600 an ounce."

The jury found Tomas-Velasquez guilty of all the charges, but the district court declared a hung jury on the charge of trafficking methamphetamine against Ashley. Tomas-Velasquez timely appeals his conviction.

## II.

## ANALYSIS

### A. Testimony About Methamphetamine Pricing

Tomas-Velasquez argues the district court abused its discretion by "misremembering" its pretrial ruling and allowing Detective McCarthy to testify at trial about the price of methamphetamine. The trial court has broad discretion to admit evidence at trial. *State v. Pearce*, 146 Idaho 241, 250, 192 P.3d 1065, 1074 (2008). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

On appeal, Tomas-Velasquez asserts the district court's "sudden about face" to allow Detective McCarthy to testify about methamphetamine pricing "surprised" him and "hampered his ability to meet the evidence at trial" with refuting testimony. In response, the State acknowledges the court expressly noted in its pretrial ruling that the State's initial disclosure "did not include the facts or data Detective McCarthy would rely upon to provide his testimony about the street value of methamphetamine" and made "general, broad[] statements regarding the exclusion" of McCarthy's testimony. Regardless, the State argues that the court "never specifically or expressly excluded Detective McCarthy from testifying about the street value of methamphetamine" and that without such a specific ruling, "a more specified motion in limine" by Tomas-Velasquez, and the inclusion of the State's disclosures in the appellate record, Tomas-Velasquez cannot demonstrate the court abused its discretion--"as opposed to simply modify[ed] and/or clarify[ed] its ruling over the course of the hearing." On reply, Tomas-Velasquez asserts his challenge on appeal is that the district court "misremember[ed] its prior decision"--not that the substance of its ruling was incorrect. He contends that because he is not challenging the

5

actual correctness of the ruling, the absence of the State's disclosures in the appellate record does not preclude this Court's review.

We agree that the actual content of the State's disclosures is unnecessary to review whether the district court reversed its pretrial ruling during trial. Both the pretrial ruling and the ruling at trial are in the record. Further, we agree with Tomas-Velasquez that the court changed its pretrial ruling at trial. During the pretrial hearing, the court expressly ruled twice that it was excluding Detective McCarthy's expert testimony. First, the court ruled that "I'll exclude that testimony" referring to the testimony about methamphetamine pricing. Then, the court again ruled without limitation that "I'm going to exclude the [S]tate's expert." In both instances, the court noted the untimeliness and inadequacy of the State's disclosure as a basis for its ruling. Contrary to the State's argument, this pretrial ruling was broad enough to preclude Detective McCarthy from testifying about *any* expert topic identified in the State's disclosures, including methamphetamine pricing.[3]

Then, at trial, the district court reversed its pretrial ruling:

> I do believe the State's disclosure that they are going to ask him questions, given his specialized knowledge as a police officer, about price and how drugs are sold was adequate and was timely made. And so I'll permit him to answer the question that was asked [about methamphetamine pricing].

This ruling directly contradicts both the court's pretrial finding that the State's disclosure was untimely and incomplete and its ruling excluding Detective McCarthy as an expert witness, including his testimony about methamphetamine pricing.

Generally, a trial court retains broad discretion over an interlocutory evidentiary ruling and may modify such a ruling at any time until the entry of the final judgment. *State v. Thorngren*, 149 Idaho 729, 736, 240 P.3d 575, 582 (2010). "[P]retrial evidentiary rulings are subject to the discretion of the court and may be changed, for example, when the court finds a more accurate interpretation of the law warrants a new ruling on the issue." *Id.* In this case, however, the district court offered no explanation for reversing its pretrial ruling to exclude

---

[3]     Although the State argued during trial that Detective McCarthy's testimony about methamphetamine pricing "requires no expert opinion under the rules of evidence," the State does not challenge on appeal the expert nature of Detective McCarthy's knowledge about methamphetamine pricing and whether that knowledge actually constituted "scientific, technical, or other specialized knowledge" subject to pretrial disclosure under the rules of evidence. *See* I.R.E. 702 (providing for expert testimony if "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").

Detective McCarthy as an expert witness--other than its inaccurate recollection and its contradictory finding that the State's disclosure was "adequate" and "timely." Nothing in the record suggests a basis for this reversal. Absent an explanation, or at least some discernable basis apparent in the record, for changing an interlocutory evidentiary ruling during trial--particularly a ruling on the admissibility of expert testimony--we hold that the court abused its discretion.

Nevertheless, we hold that any error in allowing Detective McCarthy to testify about the price of methamphetamine was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

In Idaho, a defendant may be guilty of trafficking in methamphetamine if he either actually or constructively possessed 28 grams or more of methamphetamine. I.C. § 37-2732B(a)(4) (defining trafficking methamphetamine as actual or constructive possession of 28 grams or more of methamphetamine). To prove constructive possession, the State must prove both knowledge and control of the controlled substance beyond a reasonable doubt by either circumstantial or direct evidence. *State v. Southwick*, 158 Idaho 173, 178, 345 P.3d 232, 237 (Ct. App. 2014). Constructive possession of a controlled substance exists where the State proves a

nexus between the accused and the substance giving rise to a reasonable inference the accused was not simply a bystander but rather had the power and the intent to exercise dominion and control over the substance. *Id.*

In this case, the district court instructed the jury that to find Tomas-Velasquez was guilty of trafficking in methamphetamine, the State had to prove, among other elements, that he possessed methamphetamine; he knew it was methamphetamine; and the amount "he possessed [was] at least 28 grams of methamphetamine or any mixture or substance with a detectable amount of methamphetamine." To meet this burden, the State proved the police recovered three baggies containing methamphetamine in the vehicle driven by Tomas-Velazquez. One baggie was under Ashley's leg in Officer Lane's plain view, and Ashley testified that Tomas-Velasquez took the baggie out of his pocket and tried to shove it under her leg in an attempt to hide it. Two more baggies of methamphetamine were discovered between the driver's and the passenger's seats within Tomas-Velasquez's reach. An employee of the Idaho State Police Forensic Services Laboratory who weighed the methamphetamine testified that the baggies contained 55.79 grams, 27.77 grams, and 27.53 grams for a total of more than 111 grams of methamphetamine.

Additionally, Tomas-Velasquez had a lighter, $465 in cash, and two cellphones on his person at the time of his arrest. The text messages extracted from one of these cellphones suggested Tomas-Velasquez was communicating with a third party about a drug transaction on the same day of his arrest. This suggestion was apparent even without Detective McCarthy's testimony about the price of methamphetamine. Based on this evidence, we conclude that the effect of McCarthy's testimony about methamphetamine prices was minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without this testimony and that the testimony did not contribute to the verdict rendered and, thus, is harmless.

**B.      Sufficiency of Evidence**

Tomas-Velasquez also challenges the sufficiency of evidence in support of the conviction for possession of marijuana and of drug paraphernalia. He argues the State failed to prove he knowingly possessed the marijuana found in the glove box and the smoking pipe found underneath the center armrest and, thus, failed to prove he had actual or constructive possession of this contraband.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence on which a reasonable trier

8

of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence. *Southwick*, 158 Idaho at 178, 345 P.3d at 237. Even when circumstantial evidence could be interpreted consistently with a finding of innocence, it will be sufficient to uphold a guilty verdict when it also gives rise to a reasonable inference of guilt. *Id.*

We will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. Further, we will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985).

As stated above, to prove constructive possession, the State must prove both knowledge and control of the controlled substance and drug paraphernalia beyond a reasonable doubt by either circumstantial or direct evidence. *Southwick*, 158 Idaho at 178, 345 P.3d at 237. Constructive possession exists where the State proves a nexus between the accused and the contraband giving rise to a reasonable inference the accused was not simply a bystander but, rather, had the power and intent to exercise dominion and control over the contraband. *Id.* Constructive possession, however, cannot be inferred from the mere fact that the defendant occupied, with a passenger, the vehicle in which the contraband was seized. *Id.* Circumstantial evidence, other than the mere fact of possession, may be used to find the requisite knowledge and control. *Id.*

In this case, the State proved Officer Lane smelled the odor of marijuana when he contacted Tomas-Velasquez. During a search of the vehicle, Officer Lane located a gold cylinder containing marijuana and labeled "useable marijuana" in the glove compartment and a pipe which smelled of burnt marijuana under the center armrest within Tomas-Velasquez's reach. Officer Lane also found a lighter on Tomas-Velasquez's person. Additionally, Ashley testified she knew Tomas-Velasquez had previously smoked marijuana; the marijuana found in the vehicle was not hers; and she was unaware the marijuana was in the vehicle. Although she

9

did not testify specifically about the smoking pipe, her denial that she owned or knew about the marijuana reasonably infers that she, likewise, did not own or know about the pipe used for smoking marijuana. Considering this evidence in the light most favorable to the prosecution, we conclude substantial evidence supports the conviction for possession of marijuana and possession of paraphernalia.

Further, we conclude this Court's decision in *State v. Burnside*, 115 Idaho 882, 771 P.2d 546 (Ct. App. 1989), on which Tomas-Velasquez relies, is distinguishable from this case. In that case, the police discovered psilocybin mushrooms in Burnside's vehicle in a black, vinyl bag while executing a search warrant. *Id.* at 885, 771 P.2d at 549. During the search, Burnside told the officers the bag was not his. *Id.* At trial, Burnside's passenger "repeatedly declared" he owned and packaged the mushrooms. *Id.* Regardless, a jury found Burnside guilty of possessing the mushrooms with intent to deliver. *Id.* On appeal, this Court held that substantial evidence did not support Burnside's conviction because the State "failed to rebut [the passenger's] claim of sole ownership. *Id.* Unlike *Burnside*, Ashley did not claim ownership or even knowledge of the marijuana in this case. Rather, she testified she did not own it, and we decline to substitute our view for the jury's as to Ashley's credibility. *See Knutson*, 121 Idaho at 104, 822 P.2d at 1001 (declining to substitute view for jury's as to credibility).

## III.

### CONCLUSION

We hold that the State presented substantial evidence to convict Tomas-Velasquez of possessing marijuana and drug paraphernalia. Further, we hold that the district court abused its discretion by reversing at trial its interlocutory pretrial ruling excluding Detective McCarthy as an expert witness. Regardless, we hold that allowing Detective McCarthy to testify about methamphetamine pricing was a harmless error. Accordingly, we affirm the judgment of conviction for trafficking in methamphetamine, possession of marijuana, and possession of paraphernalia.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.