486 P.2d 260

STATE of Idaho, Plaintiff-Respondent,

v.

Dillard HAGGARD, Defendant-Appellant.

No. 10788.

Supreme Court of Idaho.

June 24, 1971.

McDermott & McDermott, Pocatello, for defendant-appellant.

W. Anthony Park, Atty. Gen., and Martin R. Ward, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

This is an appeal from judgments convicting Dillard Haggard of burglary, assault with a deadly weapon, and recidivism. The principal issues raised by the appeal concern: (1) improper questioning (on cross-examination) of defendant-appellant by the prosecution; (2) sufficiency of evidence presented at trial to sustain conviction for recidivism; (3) the legality of an

identification of the defendant-appellant made at the police station.

The facts involved in this case are as follows. Dillard Haggard (defendant-appellant) was charged by part one of an Information with first degree burglary [1] and assault with a deadly weapon, and in part two of the Information with being a persistent violator of the law. The testimony elicited at the bifurcated (two part) trial indicated that as John Hall, the burglary victim, was returning home after work at about 5:30 p. m., on January 20, 1970, he noticed two personal items of his (a six pack of beer and a piggy bank) "setting on the steps" which led to his apartment. As Hall attempted to enter his apartment, he was accosted by Dillard Haggard, defendant-appellant, who had a butcher knife in his hand. "[H]e told me if I did anything, he was going to slit my throat." Haggard then questioned Hall regarding valuable items which were contained in his apartment and then picked up the beer and ran. Hall then testified that he went in the

house and called the police. Haggard was subsequently arrested after Hall identified him for the police from some photographs. On the day that Haggard was arraigned, Hall, although positive about his identification of Haggard on the basis of the photographs, asked to see him in person.

At trial, Haggard took the stand and presented a defense of alibi. He claims that he was watching television and talking to a Mrs. Frasure at the time of the alleged crimes. Mrs. Frasure corroborated this. During Haggard's testimony the prosecution elicited that he did not testify at the preliminary hearing, thus casting doubts upon the credibility of his story.[2] While on the stand the prosecution inquired of Haggard if he had "ever been convicted of a prior felony?" Haggard replied that he was convicted twice for burglary and once for armed robbery.

The jury first found Haggard guilty of assault with a deadly weapon and burglary in the nighttime. The jury was then read part two of the information which charged

---

1. In Idaho first degree burglary differs from second degree burglary in that first degree burglary describes conduct which occurs during the nighttime. I.C. § 18–1402 reads as follows:

"18–1402. Degrees of burglary.—Every burglary committed in the night time is burglary of the first degree, and every burglary committed in the day time is burglary in the second degree."

2. Testimony of Dillard Haggard on Cross-Examination:

"Q. You are familiar with a preliminary hearing, the purpose of it, aren't you?
A. Yes, sir, I am.
Q. And you know at a preliminary hearing the State is required to introduce evidence which if the Justice of the Peace believes is sufficient to bind you over to the District Court, that this is done, is this correct?
A. This is correct.
Q. And you were present at that preliminary hearing, were you not?
A. I was.
Q. And you could have testified at that preliminary hearing had you so desired, could you not?
A. Yes, I could have.

Q. But you did not testify, did you?
A. No, I didn't.
Q. But you know that you did not have anyone testify on your behalf at that preliminary, did you?
A. No, no one.
Q. But you were well aware of all of these facts about which you are now testifying today at the time that preliminary hearing was held, weren't you?
A. I was aware, yes.
Q. And yet you did not present any testimony to the Court at that time, did you?
A. No.
Q. But you know that if the judge had believed such testimony, that you are offering today, that you probably would not have been bound over to the District Court, don't you?
A. No, I don't believe that.
Q. Yet you did not give the Court any opportunity to make such a determination, did you?
A. This was upon the advice of my attorney that I not take the stand.
Q. I see. But you did not then advise the Court of your so-called alibi or the reasons for your actions, did you?
A. No."

Haggard with recidivism. The prosecuting attorney then introduced certain court files which purported to relate to prior felony convictions of Dillard Haggard. The jury was also instructed that they could consider the testimony of Haggard in the first portion of the trial wherein he stated in response to questioning by the prosecuting attorney that he had been convicted of previous felonies.[3] The jury then found Haggard guilty of recidivism and Haggard was sentenced on all three counts as follows: (1) to a term not to exceed five years on the burglary conviction, (2) to a term not to exceed two years for assault with a deadly weapon, and (3) to life imprisonment for recidivism. Dillard Haggard has appealed to the Supreme Court from the adverse verdicts.

■■■ The Court will first address itself to the questioning of Haggard with respect to his failure to disclose his alibi at his preliminary hearing. The appellant contends that he was denied due process and deprived of a fair trial because the prosecuting attorney elicited at trial that Haggard did not tell the judge of his alibi at the preliminary hearing.[4] Appellant maintains that this information should not have been made available for the jury's consideration and by so doing the lower court deprived him of a fair trial. Counsel for defendant failed to raise an objection to the cross-examination at the time of trial and ordinarily this Court would not

consider this assignment of error. However the obligation of the state to see that defendant receive a fair trial is primary and fundamental. Pulver v. State, 93 Idaho 687, 471 P.2d 74 (1970) quoting McIntosh v. Commonwealth, Ky., 368 S.W.2d 331 (Ky.Ct.App.1963). In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial. Shier v. People, 116 Colo. 353, 181 P.2d 366 (1947); State v. Cummings, 49 Haw. 522, 423 P.2d 438 (1967); State v. Bunn, 50 Haw. 351, 440 P.2d 528 (1968); People v. Rodriguez, 58 Cal.App. 2d 415, 136 P.2d 626 (1943); State v. Redmond, 75 Wash.2d 62, 448 P.2d 938 (1968). We agree with appellant that the cross-examination of the defendant (appellant) regarding his failure to testify at the preliminary hearing deprived appellant of a fair trial and was a denial of due process. The trial court should not permit the prosecuting attorney to comment on the defendant's failure to testify at his preliminary hearing. Parrott v. Commonwealth, 47 S.W. 452 (Ky.1898); Richardson v. State, 33 Tex.Cr.R. 518, 27 S.W. 139 (1894); Wilson v. State, 54 Tex.Cr.R. 505, 113 S.W. 529 (1908). The main purpose or function of the preliminary hearing is to ascertain whether the crime charged has been committed and whether there is probable cause to believe the accused committed it. State v. Dunn, 91 Idaho 870, 434 P.2d 88 (1967); I.C. § 19-814; I.C. § 19-815.[5] The de-

3. "Q. Have you ever been convicted of a prior felony?
A. Yes, sir.
Q. Would you tell the jury what those prior felonies are?
A. Yes, sir, I will. The first felony was a burglary—
Q. When was this, the first felony, burglary?
A. In 1954.
Q. Where was that?
A. Idaho Falls.
Q. When was the next one?
A. The next was an armed robbery right here in Pocatello.
Q. When was that?
A. In 1957.

Q. When was the next felony you were convicted of?
A. This was in 1964 here in Pocatello.
Q. And what was that?
A. That was burglary.
Q. How many counts?
A. Well, I was convicted of three counts of burglary.
Q. So you were convicted of three separate felony counts of burglary in 1964, then, in Pocatello, Idaho?
A. That is right."

4. See F.N. 2.

5. "19-814. Discharge of defendant.—If, after hearing the evidence adduced at the preliminary examination, the magistrate

fendant is under no duty to present any evidence at the preliminary hearing though he may do so, and the state has the burden of proof of meeting the requirements of I.C. §§ 19–814 and 19–815. I.C. § 19–809 states:

"19–809. Examination of witnesses for defendant.—When the examination of witnesses on the part of the people is closed, *the defendant may produce any material witnesses, which witnesses must be sworn, examined and cross-examined in the presence of the defendant.*" (emphasis added)

If the prosecution is allowed to cross-examine a defendant at trial concerning his failure to testify at a preliminary hearing, it will force a defendant to testify at a preliminary hearing so as to protect himself from an unfavorable inference from his silence. Furthermore, once a defendant waives this privilege and testifies then his testimony can be used against him in a subsequent trial. See cases cited in Anno. 5 A.L.R.2d 1405. This circumvents the privilege granted to an accused person by Article 5 of the United States Constitution and Article 1, Section 13 of the Idaho Constitution which states: "No person * * * nor be compelled in any criminal case to be a witness against himself." To implement this mandate the Idaho Legislature has enacted I.C. § 19–3003.

"19–3003. Defendant not obliged to testify.—A defendant in a criminal action

or proceeding to which he is a party, is not, without his consent, a competent witness for or against himself. His neglect or refusal to give such consent shall not in any manner prejudice him nor be used against him on the trial or proceeding."

The provisions of this statute clearly prohibit the cross-examination of a defendant as to his failure to testify at a preliminary hearing.

 Appellant objects to questions posed by the prosecutor with respect to his prior felony convictions when the information revealed by these questions was instrumental in convicting him of recidivism. Appellant concedes that when a defendant takes the stand in his own defense, he is subject to impeachment as any other witness. It may be shown that the witness (defendant) has been convicted of a felony. I.C. § 9–1209.[6] In an opinion released June 10, 1971, this Court reversed the rule in State v. Owen, 73 Idaho 394, 253 P.2d 203 (1953) and held:

"Our statutes cited in *Dunn*, i. e., I.C. § 9–1209, § 9–1302 and § 19–2110, do not require disclosure of either the number or the nature of the felony or felonies of which an accused has been previously convicted, to be used for impeachment purposes when he has taken the stand in his own defense." State v. Shepherd, 94 Idaho 227 at 229, 486 P.2d 82 at 84 (1971).

finds either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense, the magistrate must dismiss the complaint and order the defendant to be discharged."
"19–815. Holding defendant to answer.—If, after hearing the evidence adduced at the preliminary examination, the magistrate finds that a public offense has been committed, and that there is probable or sufficient cause to believe the defendant guilty thereof, the magistrate shall enter an order holding the defendant to answer to said public offense. which order shall be substantially as follows: 'It appearing to me that the offense set forth in the complaint (or any offense, according to the evidence presented at

the preliminary examination, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the within named A. B. guilty thereof, I order that he be held to answer the same.' "

6. "9–1209. Impeachment by adverse party.—A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

The prosecution in this case went much further in its cross-examination than this but counsel for the defendant made no objection at time of trial and therefore the propriety of this cross-examination will not be considered on appeal. Koch v. Elkins, 71 Idaho 50, 225 P.2d 457 (1950). Appellant objects however to the procedure utilized in the second part of the trial whereby the testimony elicited by the prosecution in the first portion of the proceeding regarding former felony convictions was introduced in the proceedings (conducted after the trial for burglary and assault) to prove prior convictions wherein the appellant was tried for recidivism.[7] This Court agrees with the appellant since:

"* * * while a defendant taking the witness stand may be asked if he has been convicted of a felony, that question goes only to his credibility, and this rule would exclude the testimony of defendant in this case so far as the issue of prior conviction is concerned." People v. Carrow, 207 Cal. 366, 278 P. 857 (1929); People v. Johnson, 57 Cal. 571 (1881).

It remains to be considered, however, whether the prosecution presented sufficient evidence of recidivism without considering Haggard's own testimony, to warrant the imposition of a harsher sentence and the other incidents flowing from an adjudication of recidivism. The record reveals that the prosecution introduced two district court files pertaining to Haggard's prior convictions. However it was not established, except for Haggard's own testimony, that the same Haggard, who was just convicted of first degree burglary and assault with a deadly weapon, had been convicted of the prior felonies. In the absence of some link confirming the identity of Haggard, independent of his own testimony, the conviction for recidivism must fall. State v. Polson, 92 Idaho 615, 448 P.2d 229 (1970); Angus v. State, 136 Tex. Cr.R. 159, 124 S.W.2d 349 (1939); State v. Harkness, 1 Wash.2d 530, 96 P.2d 460 (1939); State v. Furth, 5 Wash.2d 1, 104 P.2d 925 (1940). In this case there was no link or connection so the conviction of recidivism must be reversed.

■ The Court will now address itself to appellant's contention in regard to the purported illegality of his identification on the day of arraignment. The issue presented for decision is not the legality of the identification procedure, per se, but rather assuming arguendo that the procedure employed was illegal, did the witness' (victim's) *in-court identification have a foundation independent of the claimed illegal identification?* The record reveals that the victim: (1) had an opportunity to observe his assailant in a well lighted area, the entry to his apartment, at the time the crime was allegedly committed; (2) selected Haggard's photograph from several shown to him by the police; (3) testified that "Yes, I made a positive identification of the photograph of Dillard Haggard."

"* * * in-court identifications may be found capable of standing on their own two feet, even though preceded by deficient pretrial confrontations." Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 at 1241 (1968).

In view of the aforementioned indicia which demonstrate that the witness had an opportunity to identify Haggard and did in fact do so, the identification procedure, regardless of its claimed illegality, did not prejudice the appellant and is thus without merit. Clemons v. United States, *supra*; see also State v. Raine, 93 Idaho 862, 477 P.2d 104 (1970); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.

---

7. Counsel for the appellant voiced the following objection at trial:
"Your honor, I would like to object to using the admissions of Mr. Haggard when he was on the stand. This was for impeachment purposes only, of the prior convictions and I believe it would be a denial of Mr. Haggard's constitutional rights of self-incrimination." The trial court denied the objection.

S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

Judgments reversed and case remanded for new trial.

McQUADE, C. J., and McFADDEN and SPEAR, JJ., concur.

SHEPARD, Justice (dissenting in part and concurring in part).

I dissent from that portion of the majority opinion which reverses the judgments of conviction of the defendant for burglary and assault with a dangerous weapon. I concur in the opinion of the majority insofar as it reverses the judgment of conviction of the defendant on the charge of recidivism. The sole point of reversal of the conviction of the instant crimes with which defendant was charged is on the ground that "the trial court should not permit the prosecuting attorney to comment on the defendant's failure to testify at his preliminary hearing." The majority opinion points out that the defendant was questioned in respect to his failure to disclose an alibi at a preliminary hearing. The majority opinion stated that such deprived defendant of a fair trial in that this information should not have been made available to the jury. I agree that the function of the preliminary hearing is only to determine whether a crime has been committed and whether there is probable cause to believe that the accused committed it. I point out, however, that the defendant also assigned as error by the trial court the questioning of the defendant as to the specific nature of his prior felony convictions. The majority opinion indicated that the propriety of that cross-examination would not be considered on appeal since the defense made no objection to such questioning at the time of trial. I can perceive no more reason for considering the assignment of error regarding the lack of testimony on behalf of the defendant at the preliminary hearing when such line of questioning was not objected to by the defendant at the time of trial. The authori-

ties supplied in the majority opinion for this theory are adequate to support the above statement.

Insofar as the reversal of the recidivism conviction is concerned, I agree with what is inherently the basis for the majority opinion, i. e., that direct methods of proving prior convictions of one accused of recidivism are readily available to the State and should be used in preference to the "thin" proof used at trial herein of the previous convictions.