**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39387**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 424 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 28, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| CHRISTOPHER STEPHEN BEADZ, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for injuring jails, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Christopher Stephen Beadz appeals from his judgment of conviction for injuring jails. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In March 2011, while housed in a county jail, Beadz was performing calisthenics in his cell. Presumably for privacy purposes, Beadz had put a towel over his cell window. A corrections officer passing by noticed the towel and removed it because blocking the view violated jail policy. Beadz exited his cell, cursed at the officer, and returned to his cell. The officer then locked Beadz in his cell. However, before the officer could contact the jail control center, Beadz contacted control and requested to be let out of his cell. The control center unlocked the door of Beadz's cell and he again exited his cell. The officer instructed Beadz to return to his cell and Beadz refused to obey the officer. The officer subsequently led Beadz by

1

his arm into his cell. The officer again locked Beadz's cell door. After Beadz bickered with the officer for a short time, the officer began to walk away. Beadz then slammed his head into the window of his cell, shattering the glass. Just after the incident, Beadz made the statement, "[y]ou know I didn't even mean to do it." During a subsequent interview with Beadz regarding the incident, Beadz stated that "his head wasn't supposed to go through that glass." The state charged Beadz with injuring jails. I.C. § 18-7018.

At a pretrial hearing, the district court recounted a previous discussion with the parties which indicated Beadz was requesting that the jury be waived and the case be tried before the district court. Counsel for Beadz confirmed this was correct and stated that he and Beadz previously discussed the prospect of waiving a jury trial. Counsel informed the district court that because the case involved a legal issue, counsel thought it would be better for the district court to sit as the finder of fact. Counsel also stated that Beadz agreed to have the case tried before the district court. The district court then engaged in a brief colloquy with Beadz and Beadz confirmed that he desired a bench trial rather than a jury trial. After a bench trial, the district court found Beadz guilty and this appeal follows.

## II.

## ANALYSIS

Beadz argues that he was deprived of his state and federal constitutional right to a jury trial because the district court failed to obtain a knowing, intelligent, and voluntary waiver before proceeding with a bench trial. Beadz also asserts the evidence was insufficient to support the finding of guilt for injuring jails. The state argues that Beadz failed to establish fundamental error on the issue of waiver of a jury trial and the finding of guilt is supported by substantial and competent evidence.

### A.    Fundamental Error

The state argues that Beadz has failed to demonstrate fundamental error because the colloquy he implies was required is not constitutionally mandated and because any alleged error is not clear from the record. Beadz argues that the alleged error is structural and therefore requires automatic reversal. Beadz also argues that the absence of a discussion of the features of a jury trial, along with the failure to explain the differences between a bench and jury trial, and the lack of a written waiver demonstrate the waiver Beadz provided was constitutionally invalid.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Here, for the reasons explained below, we conclude the error complained of was not fundamental because the second prong, requiring that the error plainly exists, was not met; thus, we need not address the remaining prongs. With respect to this second prong of the *Perry* test, the error "must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision." *Id.* at 226, 245 P.3d at 978. This prong also necessitates a showing by the appellant that existing authorities have unequivocally resolved the issue in the appellant's favor. *State v. Hadden*, 152 Idaho 371, 375, 271 P.3d 1227, 1231 (Ct. App. 2012).

Idaho appellate courts have never specifically addressed what is constitutionally required for a waiver of the right to trial by jury. While I.C.R. 23 sets forth statutory requirements for waiving a right to a jury trial, where a court takes an oral waiver with no written waiver, a question of fundamental error is not presented. *State v. Campbell*, 131 Idaho 568, 569, 961 P.2d 659, 660 (Ct. App. 1998). Likewise, the United States Supreme Court has never set forth specific requirements or a mandatory colloquy that a trial court must provide when defendants waive the right to trial by jury. All that is required is that the waiver be a "free and intelligent choice" by the accused. *Adams v. United States*, 317 U.S. 269, 275 (1942). While some circuit courts have articulated a preferred method for trial courts to take a waiver of the right to trial by jury, none of these circuits have adopted compulsory requirements. *See, e.g., United States v. Duarte-Higareda*, 113 F.3d 1000, 1002-03 (9th Cir. 1997) (declining to impose a required

3

colloquy in every case, but providing a set of guidelines on what a trial court should do)[1]; *United States v. Martin*, 704 F.2d 267, 273-74 (6th Cir. 1983) (stating while there is no constitutional requirement of a colloquy, it is suggested that trial courts inform the accused on the record of the burdens and benefits of a jury trial); *Estrada v. United States*, 457 F.2d 255, 257 (7th Cir. 1972) (while addressing the accused personally is the preferred method, it is not compelled by the federal rules or the Sixth Amendment).

In this case, counsel for Beadz informed the district court that Beadz was requesting a bench trial. Counsel then informed the district court of the tactical reason for doing so--that the case presented primarily a legal issue and counsel thought it would be better tried to the district court rather than a jury. Counsel also informed the district court that he had discussed this with Beadz and that Beadz agreed to have a bench trial. The district court then engaged in the following colloquy with Beadz:

> [THE COURT]: Let me ask you, do you understand that you have the right to have a jury decide this case? What your counsel is telling me is that you want to waive that jury trial and let myself [sic] become the jury in effect. Is that what you want to do?
> [BEADZ]: Yes, sir.
> THE COURT: All right, I will accept that waiver. . . .

Based on the record, it is not clear that Beadz's waiver was not knowing, intelligent, and voluntary. Quite the contrary, it appears that the waiver was well thought out and made for tactical reasons. The lack of a discussion on the record of the differences between a bench trial and a jury trial, the features of a jury trial, and a written waiver does not, unequivocally under existing authority, render Beadz's waiver constitutionally deficient. Beadz discussed the issue of waiver with his attorney and manifested an intention to relinquish this right. Beadz also

---

[1] The Ninth Circuit indicated a trial court should do the following: "inform the defendant that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." *Duarte-Higareda*, 113 F.3d at 1002.

understood that the district court, rather than a jury, would decide his case. Therefore, the error is not clear or obvious from the record and Beadz has failed to establish fundamental error.[2]

## B.    Sufficiency of the Evidence

Next, Beadz argues that the state failed to produce sufficient evidence to establish beyond a reasonable doubt that Beadz committed the offense of injuring jails. Specifically, Beadz argues the evidence was insufficient to establish the requisite intent. The state argues the finding of guilt is supported by substantial and competent evidence.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

In order for Beadz to be found guilty, the state needed to prove beyond a reasonable doubt that Beadz willfully and intentionally injured a public jail. I.C. § 18-7018. The only issue on appeal is whether the evidence was sufficient to show Beadz acted with the requisite intent. Criminal intent can be inferred from the commission of acts and the surrounding circumstances. I.C. § 18-115; *State v. Warden,* 100 Idaho 21, 24, 592 P.2d 836, 839 (1979); *State v. Billings,* 137 Idaho 827, 831, 54 P.3d 470, 474 (Ct. App. 2002).

A review of the record reveals the following. While being housed in a public jail, Beadz placed a towel in his cell door's window. Blocking cell windows is against jail policy and, therefore, an officer removed the towel. This agitated Beadz, who then exited his cell and cursed at the officer. The officer secured Beadz in his cell and locked the door. However, before

---

[2]    While Beadz argues that the alleged error is structural and requires automatic reversal, structural error only precludes application of the harmless error analysis under *Perry*. We need not reach that prong given the foregoing analysis.

informing control to keep Beadz's cell locked, Beadz requested and was released from his cell. The officer directed Beadz to return to his cell and Beadz refused. The officer led Beadz by his arm and escorted him to his cell again, locking the door. Beadz thereafter quarreled with the officer and smashed his head into the cell's window, shattering its thick glass. Additionally, a recording was admitted into evidence in which Beadz stated to his father that he "put [his] head through the window going after [the officer]." From this evidence, the district court concluded that Beadz was angry, was acting out, and that "the only rationale [the district court] can come to as to why someone would strike their head against the window in the fashion that you did with as much force as you did was that you intended to cause some injury." The evidence was sufficient for the district court to make this conclusion and find Beadz guilty of the crime of injuring jails.

## IV.
## CONCLUSION

Beadz failed to demonstrate fundamental error, as it is not clear from the record that his jury trial waiver was invalid. Also, substantial evidence exists upon which the district court could have found that the state sustained its burden that Beadz willfully and intentionally injured a public jail. Therefore, we affirm Beadz's judgment of conviction for injuring jails.

Judge LANSING and Judge GRATTON, **CONCUR.**