# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42098

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 79 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 4, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MARCOS APOLLO JIMENEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Gregory W. Moeller, District Judge.

Judgment of conviction and unified sentence of eighteen years, with a minimum period of confinement of three years, for sexual battery of a minor child sixteen or seventeen years of age, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Jenny C. Swinford argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

---

MELANSON, Chief Judge

Marcos Apollo Jimenez appeals from his judgment of conviction and unified sentence of eighteen years, with a minimum period of confinement of three years, for sexual battery of a minor child sixteen or seventeen years of age. Jimenez contends that the district court erred by using Jimenez's decision to exercise his Fifth Amendment privilege to not participate in a court-ordered psychosexual evaluation against him when imposing his sentence. For the reasons set forth below, we affirm.

1

# I.
## FACTS AND PROCEDURE

Jimenez was accused by his then-girlfriend of having touched her daughter's vagina and attempting to rape her. The victim, who suffered from a condition related to autism and had been entrusted to Jimenez at the time, alleged that he inserted his fingers into her vagina and had sexual intercourse with her. Jimenez admitted to placing a finger in the victim's vagina. Jimenez pled guilty to one count of sexual battery of a minor sixteen or seventeen years of age. I.C. § 18-1508A(1)(a). In exchange for his guilty plea, an additional charge of rape was dismissed. The district court ordered the preparation of a psychosexual evaluation and advised Jimenez of his Fifth Amendment right to decline participation in the evaluation. The district court advised Jimenez that his sentence would take into account the risk he posed to society and that, without full information, it would be difficult for an evaluator to make a determination regarding Jimenez's risk of reoffending. Jimenez declined to speak with the evaluator or participate in a polygraph. At sentencing, Jimenez invoked his Fifth Amendment right to remain silent with regard to the psychosexual evaluation. After questioning Jimenez on his decision, the district court (without any objection) frequently commented on the absence of the psychosexual evaluation but repeatedly advised that its sentencing decision was based solely on the facts of the case. The district court then sentenced Jimenez to a unified term of eighteen years, with a minimum period of confinement of three years. Jimenez appeals.

# II.
## ANALYSIS

Jimenez argues that the district court erred by using Jimenez's decision to exercise his right not to participate in the psychosexual evaluation against him. Specifically, Jimenez contends that the district court erred by repeatedly expressing concern over the lack of a psychosexual evaluation and making adverse inferences about Jimenez's criminal history and potential for rehabilitation.

Jimenez concedes that he made no contemporaneous objection to the district court's statements at sentencing. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no

objection was made below if the issue presented rises to the level of fundamental error.  *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971).  In a criminal case, a claim of error not preserved by a proper objection may only be reviewed on appeal if a defendant satisfies the three requirements.  *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010).  In *Perry*, the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error.  The *Perry* Court held that an appellate court should reverse an unobjected-to error when a defendant persuades the court that the alleged error:  (1) violates one or more of a defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings.  *Id.* at 226, 245 P.3d at 978.  Here, the alleged error occurred during the sentencing hearing.  Under *Perry*, the three-part test for unobjected-to fundamental error applies to such proceedings.  Therefore, in order to prevail, Jimenez must satisfy all three elements of the fundamental error standard.

## A.     Violation of an Unwaived Constitutional Right

Jimenez argues that the district court violated his unwaived Fifth Amendment privilege against self-incrimination by using his decision not to participate in the court-ordered psychosexual evaluation against him at sentencing.  Specifically, he contends that the district court erred by drawing adverse inferences about Jimenez's criminal history and potential for rehabilitation when imposing sentence, thereby violating his Fifth Amendment rights.  Jimenez argues that it would be unreasonable for an Idaho court to conclude that it is possible to draw adverse inferences from the failure to participate in a psychosexual evaluation in light of our Supreme Court's holding in *Estrada v. State*, 143 Idaho 558, 564, 149 P.3d 833, 839 (2006).  However, *Estrada*'s holding has little application to the central issue presented here--whether a sentencing court violates a defendant's Fifth Amendment rights if it takes into account, for sentencing purposes, a defendant's refusal to participate in a psychosexual evaluation.

In *Estrada*, the Idaho Supreme Court addressed whether a post-conviction petitioner alleging ineffective assistance of counsel had demonstrated sufficient deficiency and prejudice to substantiate his claim when his counsel failed to advise him of his rights related to his participation in psychosexual evaluation.  There, the Court examined a defendant's rights against

self-incrimination when considering participation in a psychosexual evaluation and held that a sentencing court may not impose a harsher sentence for unwarned statements made during a psychosexual evaluation. *Id.* at 563-64, 149 P.3d at 838-39.

*Estrada*'s applicability here is limited. First, according to *Estrada*, the Fifth Amendment applies to psychosexual evaluations, and a defendant has a Sixth Amendment right to the advice of counsel about whether to undergo an evaluation and a Fifth Amendment right to refuse to participate in the evaluation. *Id.*; *see e.g., Hughes v. State*, 148 Idaho 448, 452-53, 224 P.3d 515, 519-20 (Ct. App. 2009). Notably, Jimenez does not contest that he received the warnings required under *Estrada*. Second, *Estrada* does not address the scope of Fifth Amendment protections or the propriety of a sentencing court drawing adverse inferences when a defendant declines to participate in the psychosexual evaluation. Third, neither *Estrada* nor Idaho law, in general, address to what extent a sentencing court may take into account a defendant's refusal to participate in the evaluation when determining a proper sentence. Therefore, Jimenez's reliance on *Estrada* is misplaced.

The United States Supreme Court, in *Mitchell v. United States*, 526 U.S. 314 (1999), directly addressed the propriety of a sentencing court drawing adverse inferences when a defendant exercises his or her Fifth Amendment protections. To begin, the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." A defendant's Fifth Amendment right against self-incrimination remains intact during sentencing. *See Mitchell*, 526 U.S. at 329; *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981). In *Mitchell*, the Court held that a defendant's Fifth Amendment right to remain silent is not waived at sentencing by a defendant's guilty plea, a defendant's statements at a colloquy preceding the plea, or by operation of law when a plea is entered. *Mitchell*, 526 U.S. at 325. The Court explained that, until a sentence has been imposed, a defendant may legitimately fear adverse consequences from further testimony. Therefore, the privilege applies until the sentence has been fixed and the judgment of conviction has become final. *Id*. at 325-27.

The *Mitchell* Court further held that the Fifth Amendment precludes a sentencing court from drawing adverse inferences from a defendant's silence at sentencing "with regard to factual determinations respecting the circumstances and details of the crime." *Id*. at 328. The Court

4

explicitly limited its holding regarding the impermissibility of inferences drawn from a defendant's silence to facts about the crime and refused to address other types of inferences that might be drawn from a defendant's silence. *Id*. at 329-30 (declining to express any view on whether a defendant's silence bears on the determination of a lack of remorse or upon acceptance of responsibility for purposes of sentencing). Writing in dissent, Justice Scalia underscored *Mitchell's* narrowness, warning that lower courts would have to deal with "clutter swept under the rug" in addressing "determinations of acceptance of responsibility, repentance, character, and future dangerousness . . . that is to say . . . the *bulk* of what most sentencing is all about." *Id.* at 340. The Court has since confirmed the narrowness of the *Mitchell* holding in *White v. Woodall*, ___ U.S. ___, ___, 134 S. Ct. 1697, 1703-05 (2014) (explaining that the *Mitchell* holding only precludes negative inferences of a defendant's assertion of his or her Fifth Amendment privilege pertaining to the facts of the underlying crime during sentencing and left open whether sentencing courts might permissibly draw some inferences for other purposes).

Since *Mitchell*, some lower courts have noted *Mitchell's* narrow holding and have held that sentencing courts may consider a defendant's silence or refusal to answer questions in determining an appropriate sentence. *See United States v. Kennedy*, 499 F.3d 547, 552 (6th Cir. 2007) (upholding a sentencing court's negative inference as to future dangerousness drawn from a defendant's refusal to participate in a court-ordered psychosexual examination); *State v. Hernandez*, 295 P.3d 451, 454 (Ariz. Ct. App. 2013) (joining jurisdictions that have concluded the Fifth Amendment does not preclude sentencing courts from considering a defendant's refusal to answer questions about the offense in determining whether he or she is suitable for probation); *State v. Blunt*, 71 P.3d 657, 662 & n.13 (Wash. Ct. App. 2003) (noting most courts have generally declined to extend *Mitchell* to prohibit inferences from silence in the context of sentence enhancements that do not involve factual details of the underlying crime). *But see United States v. Caro*, 597 F.3d 608, 629-30 (4th Cir. 2010) (noting that *Mitchell* left open the question of whether silence bears upon lack of remorse, but reasoning that *Estelle* and *Mitchell*, taken together, suggest the Fifth Amendment protection may prohibit consideration of a defendant's silence regarding a nonstatutory aggravating factor); *State v. Washington*, 832 N.W.2d 650, 660-62 (Iowa 2013) (holding that a court improperly penalized defendant for

5

invoking his right against self-incrimination when it asked whether defendant's urine sample would be clean or dirty).

In light of the express language of the *Mitchell* holding, coupled with the lack of Idaho case law, we decline to extend *Mitchell's* holding beyond where the United States Supreme Court has, itself, drawn the line. We join those jurisdictions that have adopted a narrow application of *Mitchell*, prohibiting only negative factual inferences as to the circumstances and details of the crime based upon a defendant's silence. A psychosexual evaluation is performed to assist the district court in its sentencing decision. It is an evaluative tool and aids in gauging a defendant's propensity for future violations. We echo Justice Scalia's observation that few facts available to a sentencing court are more relevant to the likelihood a defendant will reoffend, respond to rehabilitative efforts, or pose a risk to society than a defendant's willingness to cooperate. *Mitchell*, 526 U.S. at 339 (Scalia, J., dissenting); *Roberts v. United States*, 445 U.S. 552, 558 (1980). Thus, we conclude that *Mitchell* does not prohibit a sentencing court from considering a defendant's invocation of his or her Fifth Amendment privilege to refuse participation in the psychosexual evaluation as part of determining an appropriate sentence. Accordingly, even assuming the district court drew an adverse inference from Jimenez's lack of participation in the psychosexual evaluation, we hold that it would not have constituted a violation of Jimenez's Fifth Amendment protection. Therefore, Jimenez has failed to meet his burden under *Perry* to demonstrate that the district court violated an unwaived constitutional right.

**B.      Clear or Obvious From the Record**

Next, notwithstanding our holding concerning the first prong of *Perry¸* it is not clear whether the district court actually drew an adverse inference in this case. Jimenez contends that the district court's comments referencing the lack of psychosexual evaluation information indicate that the district court was punishing Jimenez for asserting his Fifth Amendment right and not participating in the evaluation. Jimenez cites to multiple statements that he contends indicate that the district court made negative inferences about his rehabilitation, criminal history, and risk to the community. Conversely, the state argues that Jimenez has not met his burden of demonstrating clear or obvious constitutional error because, despite the district court's comments, the district court expressed its awareness of Jimenez's constitutional rights and

6

repeatedly emphasized that it was basing Jimenez's sentence on the information in the record. Although the district court made a number of comments regarding the lack of a psychosexual evaluation, it also repeatedly indicated that its sentencing decision would be based on the information from the record alone.

In response to Jimenez's direct question whether the district court would be making an adverse inference from Jimenez's lack of participation in the psychosexual evaluation, the district court stated:

> The point I'm making is that if the court doesn't have an assessment of your risk, that I would be within my authority from the totality of the circumstances, *specifically the circumstances of this case that I have before me*, to assume that you are a significant risk.

(emphasis added). Additionally, relating to Jimenez's criminal history, the district court stated:

> Well, I have your criminal history, but I don't know your full sexual history. In other words I don't know whether you've abused other minors; I don't know whether or not you have a history of this kind of behavior, I just know you've never been charged with it before.
> . . . .
> Okay. And so that's the record before me, and *I'll have to make my decision based upon the information I have, not the information I don't have*.
> And so one of the reasons we have a psychosexual evaluation is so that the court can understand who you are and what type of a person you are. *If I don't have any information, then I have to look at the facts of this case and pretty much nothing else*, or there is very little else in the record to help me make a decision about what kind of a person you are. *I just know what you've done here*, and that tells me what kind of a person you are, unless there are some other factors.
> Now there might be reasons why you don't want me to know your past, and if you don't want me to know your past, then I can't make you tell me; and the Constitution says you don't have to tell me. But if I don't know your past, then I'm going to have to just judge you by the type of man I know you are *from the information that's before me.*

(emphasis added). Also, when reviewing mitigating factors weighing on Jimenez's sentence, the district court stated:

> The court is very aware that you have no record. I'm not sure what to make of that without a psychosexual evaluation or the polygraph. I could assume that that means that you've just never broken the law in your entire life, or I could assume that you've never been caught; sometimes it's somewhere in between. I do note some of the most dangerous criminals are the ones that are good enough to get away with it. But, again, I just don't have any evidence there to give me

7

confidence of what conclusions I should a draw from that. I can only assume, though, that the fact that you didn't participate must mean there's some information you don't want me to know about. I wouldn't hold that against you at a trial, that would be wrong because you have a right to remain silent at your trial and you do have a right to remain silent here now, too. But generally if there is something that you didn't want me to know, I can only assume there is a good reason you didn't want me to know it. *But, again, those things really played no factor in my sentence. I just have to deal with the case as what it is, and not what it's not, and my discussion is based on the information I do have.*

(emphasis added). Finally, immediately before imposing sentence the district court stated, "I'll base my decision based upon what I know and what I believe is right under these circumstances."

The district court expressed concern over the lack of a psychosexual evaluation. However, we cannot ignore the district court's contrary assertions that it based the sentence solely on the record before it. Moreover, we note that, after taking argument and sentencing recommendations from both parties, the district court stated that it had considered the facts of the case, the presentence investigation, the GAIN-I Core assessment, Jimenez's lack of a criminal record, and other mitigating and aggravating factors. During this colloquy, the district court made numerous references to the record regarding the nature of the case and Jimenez's actions, concluding that these demonstrated "an incredible amount of criminal thinking, which in the absence of other reports gives the court a significant amount of information on which I can base my decision." The district court also evaluated numerous aggravating factors extrapolated directly from the record before it and from the "evil" nature of the crime itself. Jimenez has provided no citation that shows where the district court indicated it was enhancing Jimenez's sentence for electing to forego participation in the psychosexual evaluation. Therefore, based upon the full context the district court's statements at the sentencing hearing, we hold that it is not clear or obvious from the record that the district court punished Jimenez for asserting his right to not participate in the psychosexual evaluation.

## C. Prejudice

Finally, Jimenez argues that the alleged violation of his Fifth Amendment rights affected the outcome of the proceedings. Specifically, he contends that the district court imposed a harsher sentence than it otherwise would have but for the lack of information that would have

been provided by the psychosexual evaluation. Conversely, the state argues that the imposed sentence follows Jimenez's recommendation, thus the proceeding's outcome was not affected.

At the sentencing hearing, the state recommended that the district court impose a unified term of twenty-five years, with a minimum period of confinement of ten years. Jimenez conceded that he understood that he was going to be incarcerated. However, he argued that the state's recommendation for a ten-year minimum period of confinement was not justified by the circumstances and he sought two to four years. He then urged the district court to consider two years and a more extensive probation.[1] Jimenez also asserted that incarceration for two years and a lengthy probation would address the state's concerns about future incidents. Jimenez did not make any recommendation regarding the length of any proposed indeterminate term. The district court imposed a unified sentence of eighteen years, with a minimum term of confinement of three years. Jimenez received a sentence not inconsistent with what he considered reasonable under the facts of this case. Therefore, Jimenez has not shown that the district court would have given him a lesser sentence had he participated in the psychosexual evaluation.

## IV.

## CONCLUSION

Jimenez has failed to satisfy any of the three prongs of fundamental error in his case. Therefore, Jimenez's judgment of conviction and sentence for sexual battery of a minor child sixteen or seventeen years of age is affirmed.

Judge GRATTON, **CONCURS**.

Judge GUTIERREZ, **CONCURS IN THE RESULT**.

---

[1]     It appears that Jimenez was referring to parole, not probation, since he acknowledges that he would be required to be incarcerated and that he would need to "get past" the parole commission.