# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 45628

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

JERAMEY STORM ANDERSON,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed:  January 11, 2019

Karel A. Lehrman, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Jason D. Scott, District Judge.

Judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Jeramey Storm Anderson appeals from the district court's judgment of conviction. Concerning his conviction for possession of methamphetamine, Anderson argues:  (1) the State did not present sufficient evidence to support the conviction; (2) the State committed prosecutorial misconduct in closing argument by arguing for Anderson's conviction based on uncharged conduct; and (3) the district court erred when it did not give the jury a unanimity instruction.  The judgment of conviction is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Testimony at trial established the following facts. After observing Anderson commit several traffic violations, two officers turned on their vehicle's overhead lights in order to stop Anderson's vehicle.  Anderson's vehicle did not immediately stop, but kept driving slowly for

1

another block and a half. Anderson testified that he did not immediately stop his vehicle because he was eating a bag of methamphetamine that he did not want the officers to discover.

The officers approached Anderson's vehicle. After Anderson opened his glovebox to remove paperwork, one of the officers observed a syringe in the glovebox. The other officer then asked Anderson to step out of the vehicle after observing Anderson acting nervous, with rapid breathing and shaky hands. After Anderson stepped out of the vehicle, the officer performed a pat-down search and asked Anderson if he could search his pockets. Anderson agreed and the officer retrieved a long glass tube from a pocket.

Anderson then consented to a search of his vehicle. During the search, Anderson waited in the back of the officers' patrol vehicle. The officers found two syringe caps, a glass pipe, and a safe in the back seat. Shortly after the officers finished the search, a drug dog arrived at the scene and indicated on the vehicle, specifically indicating on the safe. The officers took Anderson out of the patrol car and arrested him for possession of drug paraphernalia. As they were handcuffing Anderson, the officers noticed a bag on the ground near Anderson's feet with the number 420 printed across it multiple times (420 bag). The officers performed a field test of the bag which returned a presumptive positive for a controlled substance, but the officers did not perform any additional testing to specifically identify the substance.

Anderson was taken to the Ada County Jail where, as part of the booking process, he was instructed to change into jail-issued clothing. A detention deputy observed that Anderson did not appear to be sober and was "slurring" and "jarbling" his speech, trying to push through walls, and failing to follow basic instructions. After Anderson changed into jail-issued clothing, the deputy found a small bag near Anderson's discarded street clothes. The bag (jail bag) was slightly wet, had been chewed, contained a yellow substance, and had a red liquid on it that appeared to be blood. Another officer collected the jail bag and requested Anderson open his mouth. The officer observed blood at the base of Anderson's gums. The jail bag was sent to the state laboratory and after further testing, it was determined to contain methamphetamine and another controlled substance which was not specifically identified.

The two officers took the syringe caps, glass pipe, and safe to the property room. While there, the officers forcibly opened the safe and found a pair of sunglasses, ammunition, a digital scale, and a cut-off aluminum soda can containing what appeared to be drug residue (aluminum

2

can residue). The aluminum can was sent to the state laboratory for further testing, which determined the residue contained methamphetamine and heroin.

The State charged Anderson with possession of heroin, possession of methamphetamine, introduction of contraband into a correctional facility, and possession of drug paraphernalia. Concerning the possession of methamphetamine charge, the State alleged: "That the Defendant, JERAMEY STORM ANDERSON, on or about the 31st day of December, 2016, in the County of Ada, State of Idaho, did unlawfully possess a controlled substance, to-wit: Methamphetamine, a Schedule II controlled substance."

Anderson filed a motion to suppress the aluminum can residue and the 420 bag and otherwise argued for the dismissal of all charges against him. In the State's opposition to the motion to suppress, among other things, the State argued that the possession of methamphetamine charge was supported by the field test the officers conducted on the 420 bag, the laboratory test conducted on the aluminum can residue, and the corroborating evidence that the jail bag contained methamphetamine. Anderson then withdrew his motion to suppress.

During opening argument at trial, the prosecutor told the jury about the 420 bag, the aluminum can residue, and the jail bag. The prosecutor said:

> I will ask you that you find him guilty, guilty of possessing a controlled substance, methamphetamine and heroin on the tin can in the safe in the car he's driving; guilty of introducing a controlled substance or contraband into a jail for the methamphetamine found at his feet, wet, red, with blood in his mouth; and guilty of possession of drug paraphernalia, the syringe in the glove box, the glass tube in his right jacket, the safe that stored the methamphetamine and heroin, the digital scale with the 50-gram weight, the baggy with "420" on it, all used to store, conceal, and introduce a controlled substance into the human body.

During the trial, the State introduced a recording of three phone calls Anderson made from the jail which were played for the jury. In the calls, Anderson talked about eating drugs and getting sick.

During closing argument, the prosecutor stated, "What are we doing here; right? I mean, Mr. Anderson just admitted on the stand he possessed methamphetamine that night." Concerning the possession of methamphetamine charge, the prosecutor argued:

> we don't need to go over it because Mr. Anderson admitted that he had methamphetamine on him, and he consumed it when he knew he was going to be--as part of the process of being pulled over. So he admitted this in open court. There's no way counsel can get up and argue otherwise. He's guilty of [possession of methamphetamine] by admission as well as the State's evidence.

3

The jury found Anderson guilty of possession of methamphetamine and possession of drug paraphernalia, but hung on possession of heroin and introduction of contraband into a correctional facility. The district court entered judgment and imposed a unified sentence of seven years, with two years fixed, for possession of methamphetamine, and credit for time served for the possession of paraphernalia. Anderson appeals to this Court.

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

4

# III.

# ANALYSIS

Regarding his conviction for possession of methamphetamine, Anderson argues: (1) the State did not present sufficient evidence to support the conviction; (2) the State committed prosecutorial misconduct in closing argument by arguing for Anderson's conviction based on uncharged conduct; and (3) the district court erred when it did not give the jury a unanimity instruction. To provide context for the above arguments we must clarify: (1) to what methamphetamine is the State referring as evidence to support the possession of methamphetamine charge; and (2) whether that evidence properly constitutes one or more counts of possession.

## A. Evidence at Trial Shows Two Possible Sources of Methamphetamine: the Jail Bag and the Aluminum Can Residue--Either Is Sufficient Evidence of Possession of Methamphetamine

Anderson argues that his conviction for possession of methamphetamine had to be based on methamphetamine different than what the State alleged in the information. This, Anderson asserts, is because the jury hung on the possession of heroin (from the aluminum can residue) and of bringing contraband into the jail (the jail bag). Anderson asserts the jury must have concluded that the bag of methamphetamine he admitted consuming was not the jail bag. Thus, the only other evidence of methamphetamine was Anderson's statement that he ate a bag of methamphetamine that he did not want the police to discover. The State views the evidence differently, arguing that the bag Anderson consumed in his vehicle was the jail bag found during the booking process. The State further asserts that because the jail bag and the aluminum can residue were in the car at the same time, there was only one act of methamphetamine possession.

Anderson invites this Court to speculate about why the jury convicted him of some counts but hung on others. We decline to do so because inconsistent verdicts do not mean the evidence was insufficient. *See, e.g. United States v. Powell*, 469 U.S. 57 (1984); *State v Purdie*, 144 Idaho 911, 174 P.3d 881 (Ct. App. 2007). Instead, we must determine whether *any* rational juror could have found Anderson possessed methamphetamine in order to uphold the jury's verdict. *See State v. Eliasen*, 158 Idaho 542, 546, 348 P.3d 157, 161 (2015). If there are multiple possible bases for supporting a general verdict, "the inquiry on appeal becomes whether there was sufficient evidence to uphold any one of the bases of conviction." *State v. Cortez*, 135 Idaho 561, 564, 21 P.3d 498, 501 (Ct. App. 2001).

5

By viewing the evidence in the light most favorable to the State through the eyes of a reasonable juror, the evidence presented at trial shows there were two possible sources of evidence for the State's possession of methamphetamine charge: the jail bag containing the methamphetamine, which the jury could have concluded was consumed by Anderson and later found during the booking process, and the aluminum can residue.

The State presented evidence that the jail bag was the bag Anderson had consumed. First, one of the officers testified he suspected Anderson was trying to conceal an item in his vehicle because Anderson did not immediately stop after the officers turned on their overhead lights. Anderson himself confirmed this, testifying he did not immediately stop his vehicle because he was eating a bag of methamphetamine that he did not want the officers to discover. Although the officers testified Anderson did not appear to be under the influence of anything during the traffic stop, the detention deputy testified Anderson was not sober by the time he was going through the booking process. In Anderson's phone calls from jail that were played to the jury, Anderson stated he ate a lot of drugs and was starting to sober up, although he felt "like someone's been inside my brain with a hammer" and he was having difficulty talking. The detention deputy testified about the jail bag found near Anderson's street clothes. Another officer testified the jail bag appeared to be covered with blood and he found blood at the base of Anderson's gums. Additionally, evidence was presented that the state laboratory confirmed the jail bag contained methamphetamine. Anderson testified that he did not remember anything about the booking process. Here, there was sufficient evidence for a rational juror to conclude beyond a reasonable doubt that Anderson consumed the jail bag and thus, possessed methamphetamine.

The State also presented evidence about the aluminum can residue: (1) a drug dog had alerted on the safe; (2) after opening the safe, one of the officers recognized drug residue on the bottom of the aluminum can; and (3) after booking the aluminum can into evidence, the state laboratory confirmed the residue contained methamphetamine. Anderson argues that because he was not convicted of possessing heroin (which was also in the aluminum can residue), this Court must conclude the jury did not believe he possessed the methamphetamine in the residue either.

Based on the evidence the State presented, a rational juror could have found the State sustained its burden of proving the essential elements of possession of methamphetamine beyond a reasonable doubt based on the aluminum can residue. Consequently, regardless of the reasons

6

the jury hung on some counts, there was sufficient evidence to support the jury's guilty verdict for possession of methamphetamine.

**B.      The State's Single Charge of Possession of Methamphetamine Was Not Improper**

Whether these two sources of evidence provide alternative bases for the State's single charge for possession of methamphetamine is another question.  A review of the record shows that the State did not limit the evidence of methamphetamine to the aluminum can residue.  The State's earliest allegation against Anderson--in its original complaint--does not specify the means of Anderson's possession of methamphetamine, just that Anderson possessed methamphetamine on December 31, 2016, in Ada County.  The language of this allegation did not change as the State amended its complaint, filed an information, or amended its information.  Thus, the charge includes any and all methamphetamine Anderson possessed that day in Ada County.

Although the information alone was enough to provide notice to Anderson that the aluminum can residue and the jail bag fell under the possession of methamphetamine charge, the State's arguments before trial further notified Anderson that the State intended to rely on any and all methamphetamine found in Ada County that day.  Indeed, in its response to Anderson's motion to suppress, the State pointed to the aluminum can residue, the jail bag, and the 420 bag[1] as support for the possession of methamphetamine charge.

 Moreover, Anderson is incorrect that the State is required to bring separate possession charges for the aluminum can residue and the jail bag.  "Whether a course of criminal conduct constitutes a single or multiple offenses requires an inquiry into the circumstances of the conduct and consideration of the intent and objective of the actor." *State v. Major*, 111 Idaho 410, 414, 725 P.2d 115, 119 (1986); *State v. Southwick*, 158 Idaho 173, 182, 345 P.3d 232, 241 (Ct. App. 2014).  The inquiry concerns "whether there was 'a distinct union of *mens rea* and *actus reus* separated by a discrete period of time and circumstance from any other such similar incident' for each of the alleged acts of possession." *Southwick*, 158 Idaho at 182, 345 P.3d at 241 (quoting *Miller v. State*, 135 Idaho 261, 268, 16 P.3d 937, 944 (Ct. App. 2000)); *see also State v. Severson*, 147 Idaho 694, 711, 215 P.3d 414, 431 (2009).

In *Southwick*, this Court reviewed the *actus reus* component of the inquiry.  There, an officer discovered two sources of methamphetamine in a defendant's vehicle:  a scale with methamphetamine residue between the seats and a baggie of methamphetamine inside the

---

[1]      The State did not strongly pursue the conviction through the 420 bag at trial.

passenger door. *Southwick*, 158 Idaho at 177, 345 P.3d at 236. On appeal, this Court reviewed whether the defendant's criminal conduct constituted separate offenses, as the State had charged the defendant with a single count of possession of methamphetamine, without specifying the means by which the possession occurred. *Id.* at 182, 345 P.3d at 241. Because the acts of possession occurred at the same time and in the same location, the Court concluded the scale and baggie were but "alternative factual means by which the element of possession could be proved," not "multiple incidents of criminal conduct" that would require separate charges. *Id.*

Concerning the *mens rea* component of the inquiry, this Court in *State v. Heiner*, 163 Idaho 99, 408 P.3d 97 (Ct. App. 2017), stated the required intent for possession of methamphetamine is a "defendant's knowledge that [he] is in possession of methamphetamine or a substance [he] believes to be a controlled substance." *Id.* at 103, 408 P.3d at 101.

The Court reaches the same conclusion here as in *Southwick*. The State's charge does not specify the means by which Anderson's possession of methamphetamine occurred, yet, there are two alternative factual means by which the State attempted to prove the element of possession at trial: the aluminum can residue and the jail bag. Based on the evidence presented at trial, a rational juror could find both were possessed by Anderson at the same time (when he was pulled over by the officers), in the same location (inside his vehicle), and with the same intent (knowledge of possession of a substance Anderson believed to be methamphetamine). There was not a distinct union of *mens rea* and *actus reus* separated by a discrete period of time or circumstance between the two means of possession. Thus, the State's single charge of possession of methamphetamine was not improper.

## C.     The State Did Not Commit Prosecutorial Misconduct

The conclusions above dispense with Anderson's claim that the State committed prosecutorial misconduct in closing argument by arguing for Anderson's possession of methamphetamine conviction based on uncharged conduct--Anderson's consumption of a separate source of methamphetamine before the traffic stop. This argument is raised for the first time on appeal and, thus, must be reviewed for fundamental error.

Anderson claims his right to a fair trial, as protected by the United States and Idaho Constitutions, was violated because the State gave him no notice that it would seek a conviction based upon his consumption of methamphetamine before the traffic stop. Thus, Anderson objects to the prosecutor's closing argument which contended that Anderson's possession of

8

methamphetamine was proved by Anderson's admission as well as the State's evidence--as an unconstitutional surprise.

Anderson contends that the State's argument for possession of methamphetamine went beyond the jail bag, the aluminum can residue, and the 420 bag to some other source of methamphetamine Anderson consumed prior to his vehicle being stopped, a source which falls outside the purview of the information. But the record shows that before trial, the State confined its argument to the jail bag, the aluminum can residue, and the 420 bag. At trial, the State narrowed its argument to the jail bag and the aluminum can residue. Moreover, at trial, the State's theory was that once Anderson realized he was being followed by the officers, Anderson consumed the jail bag that he later regurgitated. In other words, there was only one bag of methamphetamine--it was in the car, then ingested by Anderson, and then left in the jail next to Anderson's clothes. Additionally, the charging documents and the State's pretrial argument placed Anderson on notice that any and all methamphetamine he possessed in Ada County on December 31, 2016--including the jail bag he consumed while the officers were following him-- fell within the ambit of the State's possession of methamphetamine charge. Consequently, Anderson's constitutional right to a fair trial was not violated because the State did not allege Anderson possessed methamphetamine other than the aluminum can reside or jail bag. Having failed to prove a constitutional violation, Anderson fails to show fundamental error. We need not consider his arguments under the additional prongs of the fundamental error test.

## D. The District Court Did Not Err by Failing to Give a Unanimity Instruction

The conclusion above--that the State's single charge of possession of methamphetamine was not improper--also dispenses with Anderson's argument that the district court erred when it did not give the jury a unanimity instruction. This argument is raised for the first time on appeal and, thus, must be reviewed for fundamental error.

Anderson claims that without a unanimity instruction, his right to a unanimous jury verdict and his right to be free from double jeopardy were violated. Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993). "A trial court is required to give a unanimity instruction where there is evidence of more criminal acts than have

9

been charged, regardless of whether the instruction has been requested by the defendant." *State v. Herreman-Garcia*, 160 Idaho 642, 648, 377 P.3d 1105, 1111 (Ct. App. 2016). A "unanimity instruction is used to tell the jury that they must find a defendant guilty beyond a reasonable doubt based on a single agreed-upon incident." *Id.*

As discussed above, and as held in *Southwick*, there was one charge of possession of methamphetamine based on the simultaneous possession of the jail bag and the residue in the aluminum can residue while Anderson was in the car. Consequently, all the evidence presented at trial concerning Anderson's possession of methamphetamine fell within the scope of the State's charge. Thus, the jury was not presented with evidence of additional criminal acts that could be, but were not, charged by the State upon which the jury could have convicted Anderson. For this reason, the district court did not err or violate Anderson's constitutional rights by failing to give the jury a unanimity instruction. Because Anderson has failed to show his right to a unanimous jury verdict or his right to be free from double jeopardy were violated, he fails to show fundamental error. We need not consider his arguments under the additional prongs of the fundamental error test.

## IV.

## CONCLUSION

The State presented sufficient evidence upon which a reasonable juror could convict Anderson of possession of methamphetamine. Anderson failed to show that either the prosecutor's closing argument or the trial court's failure to give the jury a unanimity instruction amounts to fundamental error. Thus, the district court's judgment of conviction is affirmed.

Judge GUTIERREZ and Judge LORELLO **CONCUR**.